## Abraham Ozmun

*v.*

## Reuben Reynolds, et al.

Our statute limiting the time within which an action may be commenced
upon a contract, or other obligation, express or implied, does not apply to an
action for the forclosure of a mortgage.

On the 20th day of June, 1865, the plaintiff filed his com-
plaint in the office of the clerk of the District Court for Olm-
sted County, and on the same day, summons was served on
the defendant Reuben Reynolds.

The action was brought to foreclose a mortgage executed by
said defendant and wife to Clinton Bowker, dated July 1,
1857, to secure the payment of a promissory note executed by
said Reynolds to said Bowker of same date, and due one year
thereafter.

The answer for a defense alleges that the cause of action
did not accrue within six years next before the commence-
ment of the action.   To this answer the plaintiff demurred,
on the ground that it did not state facts constituting a defense.

The demurrer was overruled, and from the order overruling the same, the plaintiff appeals to this court.

Jones & Butler, for appellant.

I.   The statute of limitations of this state, except section 12, does not apply to equitable actions at all.   Compiled Statutes, page 532; Title, Sec. 1, 2, etc.

The old court of chancery was a separate tribunal.   Revised Statutes, p. 462.

And it is expressly enacted, that the term "civil action," does not include equitable actions.   Revised Statutes, page 462, Sec. 2; Revised Statutes, amendments, page 19, Sec. 82, and page 18, Sec. 81.

(*a.*) Courts of chancery have exclusive jurisdiction of actions for the foreclosure of mortgages.   Revised Statutes, page 468, Sec. 57; Comp. Stat. page 671, Sec. 8.

The act of March 5, 1853, simply abolishes courts of chancery as separate tribunals, and enacts that *thereafter* equitable actions shall be termed "civil actions."   Comp. Stat. 480.

The statute of limitations was passed *before* the court of chancery was abolished.   Chap. 80, Revised Statutes.

*At that time* the words "civil action," or "action," and "suit in chancery," had each a specific meaning in the law, and the *former* in no instance *included the latter*.   Revised Statutes, *ante*.

There is no express statute making the statute of limitations applicable to suits in equity, consequently the language of our Supreme Court, although not made perhaps with this point in view, is full of meaning.   "*Nothing* but an *absolute payment or express release will* operate as a discharge of the mortgage.   The lien lasts as long as the debt."   *Not* as long as the *remedy*, simply.   6 Minn. R. 189; *Whiteacre v. Fuller*, 5 Minn. R. 517.   And such is the language of the mortgage itself.   See complaint.

Ozmun v. Reynolds et al.

(*b.*) It is unquestionably true *that at the time* of the enactment of the statute of limitations, the Legislature used the terms "actions" and "civil actions," with reference to "actions *at law*," *only*. Revised Statutes, *ante*.

And if any portion of the statute applies to this action, it is only Sec. 12, as that section by its peculiar construction may perhaps be intended for equitable suits.   Statute of New York, Voorhies' Code, 71, Sec. 97; Comp. Stat. 533, Sec. 12.

The change in the words as used in our statute is a re-enunciation of the intention of the Legislature that the preceding sections *are not* ("not being") provided for the purpose of applying them to equitable actions ("actions for relief.")

(*c.*) There can *now* be no other proceeding in court than a suit in chancery in cases like the one at *bar*.   Session Laws, 1860, page 216; *Swift v. Fletcher*, 6 Minn. R. 550.

In such cases, ten years is the only limitation.   *Elwood v. Defendorf*, 5 Barb. Sup. Ct. R. 399; *Bloodgood v. Bruen*, 4 Seld. 362; *Mayor of N. Y. v. Colgate*, 2 Kern. 140.

II.   A mortgage given to secure a contract debt is not affected by the statute limiting the time for commencing actions on such debt.   *Borst v. Corey*, 15 N. Y. R. 505; *Balch v. Onion*, 4 Cush. 559; *Thayer v. Mann*, 18 Pick. 535; *Elkins v. Edwards*, 8 Geo. 325; *Van Hook v. Whitlock*, 3 Paige, 417; *Heyer v. Pruyn*, 7 Id. 465; *Fulton v. Erwin*, 27 Miss. (5 Cush.) 772.

(*a.*) The statute affects the *remedy only* on the *note*, but a bill in equity may be filed to foreclose the mortgage.   2d Parsons on Contracts, 379, Ch. 6, Sec. 8; *Union Bank v. Stafford*, 12 How. U. S. 327; *New Orleans C. & B. Co. v. Stafford*, Id. 343.

(*b.*) The general rule that a discharge of the debt discharges the mortgage is not applicable where the action upon the note is simply barred by the statute.   *Bush v. Cooper*, 26 Miss. (4 Cush.) 599.

(c) A plea of the statute of limitations will not prevent the enforcement of the mortgage. *Joy v. Adams*, 26 Maine, (13 Shep.) 330.

(d) It is a *general rule* that a statute which bars an action upon the note, does not affect the remedy upon the mortgage, and it is also held that where the statute bars the remedy upon the note, but does not bar the remedy on the mortgage, the debt is protected by the mortgage, and the statute does not apply against the remedy on the note. 2 Hilliard on Mortgages, 25, Sec. 25.

III. In answer to respondent's remarks, we submit that the theory contended for, viz : that when the statute bars the *legal* remedy, a court of equity will confine the equitable remedy to the same period, does not obtain in this case, for these reasons:

(a) It only applies where courts of law and equity have *concurrent* jurisdiction. 24 Wend. 587, 607; *Borst v. Corey*, 15 N. Y. R. 607; *Lawrence v. Trustees, etc.*, 2 Denio, 577.

(b) This action is *not* brought upon the *note*, but upon the conveyance. A mortgage *is* a conveyance subject to a defeasance, and not a mere lien or security. The allegation of the note is matter of inducement merely—we ask no personal relief. *Heyward v. Judd*, 4 Minn. 491; 7 Minn. 462; 4 Id. 477; 4 Kent Com. 138.

That section 6 of the statute of limitations would bar the legal remedy on the *note* is not doubted, but this being a matter of which courts of equity have *exclusive* jurisdiction, there can be no statute barring the *legal* remedy for there *is no right of action at law.*

Charles C. Willson, for respondents.

I. The statutes of limitations of actions, (Comp. Stat. p. 632,) merely denies to parties the aid of the courts to enforce their demands after certain periods therein limited. The statute does

not profess to extinguish the rights or duties of parties, but in order to foster diligence, and afterwards secure repose, it withholds the process of the courts after certain specified periods.

If an action be not brought within six years after maturity, upon a promissory note or other contract, the sovereign will of the people is by this statute declared to be, that the civil courts are no longer open to enforce so stale a demand. The debt is not extinguished, the duty of the defendant remains unaltered, every other way or means of obtaining payment remains untouched. If the creditor have taken a pledge or pawn as security, the debtor cannot reclaim it, without first paying the debt. If the debtor bring replevin for the pledge, he will be defeated, unless he first pay the debt and demand a return of the pledge. The statute does not prevent the sale of the pledge by the creditor, after the expiration of the six years, (upon proper notice and advertisement) to pay the debt. And if a mortgage contatn a power of sale on default, this power can be exercised, *in pais*, at any time before the lapse of time shall be so great as to raise a controlling presumption of payment, independent of any statute of limitations. The statute is a *limitation of actions* and nothing more. Angell on Limit. 4th Ed. Sec. 73, and the cases there cited; Chitty on Con. Ch. 5, Sec. 9, 5th Am. Ed. p. 805.

II. Our statute of limitations of actions was passed in 1851—before the blending of the courts of law and equity—and in *stricti sensus*, included only causes at law, as the word *actions* technically does not include suits in equity. But long prior to 1851, this statute in England and in the older States had received interpretation and application to causes in equity, and it had long been the established doctrine that courts of equity acted in analogy, if not in obedience, to this statute, and our Legislature is presumed to have enacted this statute in view of, and with reference to, such prevailing interpretation in the equity courts. Angell on Limit. (4 ed.) Secs. 25 to 29 inclusive, and cases there cited; *Humbert v. Trinity*

*Ch.* 24 Wend. 587, 607; 1 Story Eq. J. Secs. 64, a 529, 1520, and notes to these sections.

III.   Our statute provides that actions can only be commenced within the periods prescribed, viz:

(6.)   In six years; 1st, an action upon a contract or other obligation expressed or implied ; * * * * 6th, an action for relief on the ground of fraud.

A mortgage is a contract, and being sealed, it is appropriately termed an obligation (as that word *ex vi termini* imports a seal, 2 Serg. & Rawle, 502,) and this section six (6) of the statute comprehends all causes of action arising *ex contractu,* (it is so defined in 6 Minn. R. 352–3) and also equitable suits for relief on the ground of fraud.

The note and mortgage being the foundation of the action, and payment of them the object of the action, the intermediate steps in equity by which the land is converted into money to pay the note do not change its character or make the suit any the less an action upon contract properly so called. *Borst v. Cory,* 15 N. Y. 505; *Mayor, &c., of N. Y. v. Colgate,* 12 N. Y. 140.

IV.   Section 12, page 533, of Comp. Stat., refers to those peculiar equitable suits not founded on contract but having their origin in fraud, mistake, surprise, etc., when there was no concurrent remedy or relief at law (*e. g.* 4 Selden, 362.)

The New York statute of limitations contained a similar provision, yet foreclosure suits in equity are not there held to be limited to ten years, but may be brought at any time within twenty years after the debt secured falls due under the provision that actions upon *sealed* contracts may be commenced within twenty years.   See the New York statute in the appendix to Angel on limitations, pages 58–59.   New York Code of Practice, Sec. 97; 5 Barb. S. C. R. 411; 10 Paige, Ch. R. 446.

Nor does the act (Laws 1860, p. 216) prescribing the order in which remedies shall be prosecuted affect the character of the remedy, or alter the above mentioned rule.

V.   Anciently, a mortgage was regarded as a conveyance, subject to a defeasance, and if the day of payment passed without actual payment of the debt, the title vested in the mortgagee, and the mortgagor had no relief except by bill in equity to redeem.

But this theory has long been obsolete, and mortgages have become but liens, passing no present title or estate in the land until after foreclosure.   They are but evidences of, and securities for, debts, and are comprehended by the statute of limitations of actions, with other contracts and obligations. Comp. Stat. p. 596, Sec. 11; *Adams v. Corriston*, 7 Minn. R. 462; *Kortright v. Cady*, 21 N. Y. 347; Comp. Stat. p. 396, Sec. 60; Ib. p. 398, Sec. 6; Ib. p. 438, Sec. 12.

Under the old rule in England, that the mortgagee became seized of the title after the law day passed without payment, (subject only to redemption in equity,) it was held that no length of mortgagor's posession would bar the mortgagee, for he held the legal title, and the mortgagor was regarded as his tenant at will, and not as holding adversely.

But that doctrine is now passed away, and the view which courts of equity took of the rights of the parties, now obtains also in the courts of law.   Indeed, it never obtained a foothold in this country.   Angell on Limit. Secs. 452 to 456; *Hughes v. Edwards*, 9 Wheat. 497; *Bacon v. McIntire*, 8 Met. 87.

VI.   All actions brought in the courts of record are limited by our statute.   If the action is brought to collect a debt secured by a mortgage on lands, it is not the less comprehended by the statute, as the statute makes no exceptions whatever. If any action be brought, it must be commenced within the times in the statute limited; and suits in equity are by a long

series of adjucations, and by the policy of Chancellors, as much within the statute as actions at law. The statute is to be made to operate as if Sec. 3, p. 532 read, "actions at law and suits in equity can only be commenced," &c. The Supreme Court of the United States have said in 12 How. 340, 341, that "in cases of concurrent jurisdiction, courts of equity are said to act in obedience to the statute of limitations, and in other cases they act upon the analogy of the limitations of law." Actions to foreclose mortgages are actions founded upon contract or obligation, and must be commenced within six years.

The case of *Borst v. Corey*, 1 Smith, (15 N. Y.) 505, is authority for most of these positions. That suit was brought to foreclose an equitable lien for purchase money, (that is, to foreclose the implied contract that the seller should have security on the land for the purchase money.) This implied contract not being written out, signed and *sealed*, stands in court of as high a character as our mortgages do under our statute, which makes no distinction between sealed or unsealed, expressed or implied contracts, and the conclusions reached by the court in that case are entitled to the highest consideration here.

In Massachusetts, and most of the other States, the limitation is six years for suits upon notes, and twenty years upon sealed mortgages, and questions have arisen, whether the mortgage could be foreclosed by suit after the remedy upon the note was barred, and it has been generally held, and justly so, that the mortgage could be so foreclosed. But as no such distinction is made in our statute, the reasoning in those cases is of no consequence in this case, and is mentioned only to ex-explain certain reported cases which might otherwise mislead; *e. g.* Cush. R. 559; 19 Pick. 535.

It seems to be conceded by the appellant, that if our statute of limitations had in terms embraced suits in equity as well as actions at law, and read as follows: "Sec 3. Actions at law

and *suits in equity* can only be commenced within the periods prescribed by this chapter," &c., then and in such case this demurrer would have been properly overruled.

The respondent contends that the district court in the exercise of its equitable jurisdiction in cases where concurrent remedies exist at law, very justly and appropriately yields obedience to this statute as fully and readily as if suits in equity were expressly named in the letter of the statute.

In *Hovenden v. Lord Annesley*, cited in Note 2 to Sec. 1520, Story, Eq. Jur., Lord Redesdale, of the High Court of Chancery in Ireland, said:

"But it is said that courts of equity are not within the statute of limitations. This is true in one respect. They are not within the words of the statute, because the words apply to particular legal remedies; but they are within the spirit and meaning of the statutes, and have always been so considered. I think it is a mistake in point of language to say that courts of equity act merely by analogy to the statutes; they act in obedience to them. * * * * I think the statute must be taken virtually to include courts of equity, for when the Legislature by statute limited the proceedings *at law*, it must be taken to have contemplated that equity followed the law; and, therefore, it must be taken to have virtually enacted in the same cases, a limitation for courts of equity also." 2 *Schoales & Lefroy's Irish Ch. R.* 630.

In *Foley v. Hill et al.*, Lyndhurst, Lord Chancellor of England, A. D. 1844, in delivering judgment repeats the above from Lord Redesdale, *as above quoted*, and gives it the sanction and approval of the highest equity court in England. 1 Phillips Ch. Rep. 405, (Banks, Gould & Co., American Edition of 1848.)

In *Miller v. McIntyre*, the Supreme Court of the United States, 6 Peters, 61, 67, after referring to the opinion of Lord Redesdale, say, (McLean, J.,) "From the above authorities it appears the rule is well settled both in England and in this

country, that effect will be given to the statute of limitations, in equity, the same as at law." And in *Bank of the United States v. Daniels*, 12 Peters, 56, the court says that, "the courts of law and equity have concurrent jurisdiction, and the complainants having elected to resort to equity, which they had a right to do, were as subject to be bound by the statute in the one court as the other. In such cases the courts of equity act in obedience to the statute of limitations, from which they are no more exempt than the courts of law."

These cases were also referred to and approved by the U. S. Sup. Court, in 9 Peters, 416; 7 Howard, 258; 8 Howard, 222; 12 Howard, 340; 1 Howard, 194.

In *Kane v. Bloodgood*, 7 Johns. Ch. Rep. 90, 121, Chancellor Kent examines the English cases at length, and approves of the doctrine enunciated by Lord Redesdale, and gives it the sanction of that court, and see also *Roosevelt v. Monk*, 6 John. Ch. 266.

In the revision of the N. Y. statutes in 1830, this doctrine was incorporated into the statute law of that state, and thereafter disappeared in the discussions in the courts of that state. Rev. Stat. of N. Y. p. 301, Sec. 49.

In *Crwford Co. v. Iowa Co.*, 2 Chandler Wis. Rep. 14, the highest court in the state of Wisconsin held that the statute of limitations of that state, and from which our statute is copied, had the same application in suits of equity as in law.

From what is said above, it will be seen how little weight that part of the appellant's argument is entitled to, which is based on the fact that actions at law only are directly mentioned in our statute of limitations.

In 2d Parsons on Contracts, Ch. 6, Sec. 8, p. 379, the true doctrine is stated, that the debt is not extinguished, although under the statute no action can be maintained. And it is true that if one holds a note against which the statute has run and also a mortgage to secure it, he cannot sue the note, but he can have a bill in equity to foreclose his mortgage, *at any time*

*before it also is barred by that portion of the statute relating to sealed instruments;* with this qualification of the general rule there stated, I assent to its correctness, and the cases cited in the note at the foot of the page are ample authority for the exception I have indicated. See Angell on Limit., Sec. 73, 4th Ed. where some of the same cases are cited and explained.

In *Union Bank v. Stafford,* 12 Howard, 327, the four years limitation by the statue of Texas, had not run, as the first installment fell due March 1, 1844, and the bill was filed in February; 1848, see page 340, and the court in this case dis tinctly states that courts of equity act in obedience or analogy to the statute, but deny that a foreclosure suit has any analogy to trover, detinue or trespass, which, by the Texas statute was limited to two years.

If the appellant's view of our statute (Comp. Stat. pages 532–3) is correct, why did the Legislature, in Sec. 12, use the words " *an action for relief,*" instead of " *suits in equity for relief,*" and why did they use the same words that were employed when speaking of actions at law, in the first line, at the top of the same page, 533?

The fact probably is, that the territorial Legislature admired the Texas policy of short limitations and liberal policy towards debtors, to encourage emigration. They expunged the distinction between sealed and unsealed instruments, and brought actions on both classes down to the shorter limit; and the established principles of courts of equity bound them to conformity.

*By the Court*—Wilson, Ch. J.—I think our statute limiting the time for the commencement of actions, applies as well to equitable as to legal proceedings. The first section of the chapter on limitations provides that " the distinctions between forms of *actions at law* heretofore existing are abolished, and there shall be in this Territory hereafter but one form of *action at law.*" Section 3, of the same chapter, provides that

" actions can only be commenced within the periods prescribed
in this chapter." It will be observed that the application of
the first section is limited to " *actions at law*," as distinguished
from equitable actions, while the language of the third section
applies to actions generally. Subdivision 6 of section 6 of
the same chapter, limiting the time of commencing " an action
for relief on ground of fraud," and section 12, limiting the
time of commencing " an action for relief not being before
(not hereinbefore) provided for," seem clearly to refer to equi-
table proceedings. These sections are taken verbatim from
the original report of the commissioners of practice and
pleadings in New York, (see Report, Sec. 574, subd. 6, and
Sec. 580,) and they were taken substantially by said commis-
sioners from the revised statutes of said State, in which they
expressly referred to proceedings in equity. This had been the
law of New York since 1830—long before the distinction be-
tween legal and equitable remedies was abolished. (See 2 N. Y.
Rev. Stat. Part 3, Ch. 4, p. 302, and revisor's notes to said chap-
ter.) The New York revisors, in adopting this section, truly said:
" It is conceived that every reason for the existence of a statute
of limitations as to suits at law, applies with greater force to
cases in equity." I think it may be legitimately inferred that
our Legislature, in adopting this statute, intended, also, to
adopt the construction or meaning given to it in the State
from which it was taken, there being no reason for holding
that meaning or construction inapplicable to the condition or
practice of our State. It has been held in England that equi-
table proceedings are not within the words of the statute,
because the words apply only to particular legal remedies, and
so it has also been held in many of the States of the Union.
But it cannot be so held under our statute, for, as we have
seen, the Legislature did not give to the term " *actions*," such
limited signification. When they wished to limit its applica-
tion to legal, as contra-distinguished from equitable, proceed-
ings, they used the expression, " actions at law." We find,

too, in the same chapter that prescribes the time within which actions may be commenced, a section prescribing the place of trial of an "action for the foreclosure of a mortgage of real property," which is, of course, an equitable proceeding. But whatever view may be taken of this question, the defense set up must be overruled. Subdivision 1, of chapter 6, of this chapter of our statutes above referred to, provides that "an action upon a contract, or other obligation, express or implied," shall be commenced within six years after the cause of action accrues, which the defendant's counsel insists is a bar to this action. This view, which is based on the hypothesis that this is an action upon a contract—the mortgage—does not seem to me tenable, though there are many dicta that seem to support it. In the examination of this case, we need not notice the accidental fact that the mortgage was accompanied by a note, for it is clearly unimportant, so far as the application of the statute of limitations is concerned, whether the mortgagor has, in any way, become *personally* liable for the sum secured by the mortgage. So, too, I think it is unimportant whether the mortgage contains a power of sale. The question in this case, fairly presented, is, whether an action or suit to foreclose a mortgage, is an action on a contract, within the meaning of our statute above cited. If it is, it must be for the enforcement of such contract, or for damages for its breach, and we must look to the contract to ascertain the nature of the relief, or the measure of damages to which the plaintiff is entitled. An action to foreclose a mortgage (as the expression is ordinarily, but inaccurately, used) is manifestly not an action to enforce any stipulation or contract expressed in the mortgage, or implied from its language. There is no covenant implied in a mortgage for the payment of the sum intended to be secured, nor are the respective rights of mortgagor and mortgagee (the reciprocal rights of redemption and foreclosure) which exist between these parties secured by their contract; such rights would

equally exist if the parties had expressly stipulated to the contrary.  No damages can be awarded to the plaintiff unless where the mortgagor has, in some manner, made himself personally liable for the sum secured.  There has been no breach of any contract contained in the mortgage, either express or implied, and, therefore, there is no right of action *on such contract,* either for damages or for a specific performance.  The right to apply to the court, either to redeem the premises or foreclose the mortgage, is a right incident to the relation of mortgagor and mortgagee—secured by law and not by contract.  A mortgage is, in form, a conveyance, to be void on the performance of certain conditions.  It is true that equity looks upon and treats it merely as an incident to the debt secured—as a lien—but this is not by virtue of the agreement of the parties, but in pursuance of those equitable maxims and rules that have come to be acknowledged as the law of the land.  According to the contract of the parties the plaintiff would be the owner in fee absolute of the mortgaged premises, but equity secures to the mortgagor a right of redemption, and to bar and foreclose the defendant of such equitable right, this action is brought.

Nor is it material whether the court orders a strict foreclosure, as in some places is the practice, or a sale of the premises.  The direct operation of the judgment is, in either case, to enforce the lien, and incidentally, in both cases, it ordinarily secures the debt; but from this it does not follow that such action is an action for the recovery of the sum secured, for it is only in such cases where the mortgagor has assumed a personal liability that a personal judgment can be rendered against him.  From the fact that a mortgage is now held to be a mere lien, or security, for the debt, it does not follow that, because an action for the recovery of the debt is barred, the enforcement of the lien is also barred.  The language of the statute does not justify such conclusion, and the decisions of the courts are nearly unanimous against

it. It is well settled that whether the security for a simple contract debt is a lien on personal or real property, the lien is not impaired in consequence of the debt being barred. *Belknap v. Gleason*, 11 Conn. 160; Ang. on Lim. Sec. 73, and notes, and cases cited in notes. I think it admits of doubt whether subdivision 1, of section 6, of our statute, above cited, applies at all to equitable proceedings, but even if it does, this case is not within either its letter or spirit, and I think the order appealed from should therefore be reversed, and the cause remanded.

Berry, J.—I think this is an action upon a *contract*, but that it is also an *action for relief* within the meaning of section 12, page 533, Pub. Stat.; that section 12 controls in cases of this kind, and fixes the period of limitation at ten years under the statute, as it was when this action was brought. This view, of course, leads me to concur in the disposition of the case.